No. 6800.

A. PITOT, SEQUESTRATOR, ETC., VS. CHAS. F. JOHNSON ET AL.
BARTLETTE & RAYNE, INTERVENORS.

The shares of the capital stock of corporations are not " credits " within the meaning of the
    Code, and the pledge of such stock is perfect by the simple delivery of the Certificate of
    stock, without notice to the corporation

The principle is binding upon the Corporation itself, whatever its by-laws may provide to the
    contrary.

The maxim of *stare decisis* should apply in this case.

APPEAL from the Fifth District Court for the parish of Orleans.
    *Rogers*, J.

*Alfred Grima* for Plaintiff and Appellee.

*Singleton & Browne* for Intervenors, Appellants.

The opinion of the Court was delivered by

FENNER, J. This case presents a contest over the value of forty
shares of stock of the New Orleans Mutual Insurance Association,
which stood in the name of Chas. F. Johnson & Co., between the follow-
ing parties:

1st. Bartlette & Rayne, who claim by virtue of a pledge of the stock
to them made by Johnson & Co. on *October 21st, 1873*, accompanied by
delivery of the stock certificates.

2d. The plaintiff, Pitot, sequestrator, who claims by virtue of a
seizure under *fi. fa.* of the stock in the hands of the corporation made
in *December, 1874*.

3d. The New Orleans Mutual Insurance Association, which claims
that, under a provision of its charter, its stock cannot be transferred
" while any matured indebtedness to the association exists on the part
of the holders," and that Chas. F. Johnson & Co. owes " matured indebt-
edness" to the amount of sixteen hundred dollars, evidenced by two
notes in its favor, dated, one *October 26, 1873*, the other November 21,
1873.

It is conceded that the claims Nos. 2 and 3 above recited, both now
enure to the benefit of the Insurance Association, and form double
grounds upon which it claims the proceeds.

The judge *a quo*, in a learned opinion, held that, under article 3158,
Rev. C. C., the certificates of stock being " credits not negotiable," the
pledge thereof was not complete, as to third persons, by the mere de-
livery of the certificates, but required also the giving of notice to the
" debtor," or corporation; and that no such notice of the pledge to Bart-
lette & Rayne having been given prior to plaintiff's seizure, the said
seizure must hold the stock or its proceeds.

If the question were an open one, we should be disposed to affirm

the judgment of the court *a qua,* considering it to be based on a sound construction of article 3158 taken as a whole, and particularly of the last clause thereof. But since the date of that judgment, two decisions have been rendered by this Court holding that shares of stock were not credits, within the meaning of Art. 3158, and that a sale or pledge of the stock of an incorporated company, is, under article 3158, complete, even as to third persons, by the delivery to the vendee or pledgee of the certificates of stock, and that notice to the corporation is not necessary to the perfection of the sale or pledge or to protect the stock from seizure by the vendor's creditors, or from other rights of third persons arising subsequently to the sale or pledge. Smith vs. Slaughterhouse Co., 30 An. 1378; F. & T. Ins. Co. vs. Dry Dock Co., 31 An. 149.

These decisions confront us with a question of *stare decisis,* which must control our action in the present case. In the system of modern commerce, the sale and pledge of stocks form such important factors in financial operations, that it is of the utmost consequence that the legal mode of effecting such sales and pledges should be definitely ascertained and free from doubt. Since the rendition of these decisions, doubtless, a multitude of such transactions have been consummated in full reliance upon them, as a final settlement by the highest judicial arbiter of the law upon this subject. In such matters, a vacillating jurisprudence is more disastrous in its effects than even an erroneous one. We feel constrained, therefore, to accept and follow the decisions referred to. It results, necessarily, that the seizure under plaintiff's judgment could not prejudice or affect the rights of Bartlette & Rayne as pledgees. The same principle equally disposes of the claim of the Insurance Association based upon the provision of its charter above referred. Admitting the validity and binding effect of the provisions, it yet appears that, at the date of the pledge, the holder of the stock owed nothing to the corporation. If notice had been necessary to the validity of the pledge, and had been given, it would not be pretended that, *after* such notice, indebtedness of the stockholder, arising subsequently, could, in any manner, operate to the prejudice of the rights of the pledgee. But since it is held that, without notice, and by the mere delivery of the certificates, the pledge is binding as to the corporation and all third persons, it logically follows that the pledge fastens on the rights of the pledgor as they stood at the moment of the pledge and cannot be affected by subsequent transactions between him and the corporation.

A different question might present itself if the indebtedness to the company had existed at the date of the pledge.

Practically, it lies within the power of either party to protect himself. The corporation when about to permit a debt to be contracted by a holder of its stock for which it desires the protection of the clause in

its charter, may secure the same by requiring the holder to produce his certificates of stock. The pledgee, when about to advance on the pledge and delivery of the certificates, may apply to the corporation for information as to the indebtedness of the pledgor to it.

For these reasons, it is ordered that the judgment appealed from be annulled, avoided and reversed, except that portion thereof which gives a personal judgment in favor of the intervenors and against Chas. F. Johnson & Co. and the members of said firm, which portion is hereby affirmed; and it is now further ordered, adjudged and decreed that Bartlette & Rayne have the right to sell the stock involved herein at public or private sale at their option, as stipulated in their act of pledge, and to be paid the amount of their judgment against defendants out of the proceeds of sale, by preference over all other parties; and that the New Orleans Mutual Insurance Association be condemned to allow them to transfer the said stock and make complete title to the purchaser; the costs of the lower court and of this appeal to be paid by the New Orleans Insurance Association.